INMAN, Judge.
 

 One hundred feet of tire impressions veer off a highway, past a scuffed boulder, and end at a damaged, unoccupied vehicle whose registered owner is found walking along the same highway disoriented and unsteady on his feet. He admits that he is "smoked up on meth" and that he wrecked the vehicle "a couple of hours" earlier. Most anyone would surmise what happened, and might very well be right. But because the law prohibits imposing criminal liability based on conjecture, gaps in the evidence and controlling precedent require that we reverse Defendant's conviction for driving while impaired.
 

 *743
 
 Paul Eldred ("Defendant") appeals from a judgment following a jury verdict finding him guilty of driving while impaired ("DWI"). Defendant argues that the trial court erred in denying his motion to dismiss because the State failed to present evidence that his admitted impairment began before or during the time he was operating his vehicle. After careful review, we agree.
 

 Factual and Procedural History
 

 The State's evidence at trial tended to show the following:
 

 On 30 October 2015, between 8:20 and 8:30 p.m., law enforcement officers in Avery County received a radio communication of a reported motor vehicle accident on Highway 221 north of the intersection with Highway 105. Avery County Sheriff's Deputy Timothy Clawson ("Deputy Clawson") and State Highway Patrol Trooper J.D. Boone ("Trooper Boone") found a Jeep Cherokee stopped on the right shoulder of the highway. The vehicle was facing north, in the same direction as the right lane of travel, toward Grandfather Mountain. The vehicle's right side panel was damaged. Officers observed approximately 100 feet of tire impressions on the grass leading from the highway to the stopped vehicle. The first ten feet of the impressions led from the highway to a large rock embankment that appeared scuffed. Beyond the embankment, the impressions continued to where the vehicle was stopped. No one was in the vehicle or at the scene.
 

 Deputy Clawson searched for information based on the vehicle's license plate and learned that the registered owner was Defendant. He then left the accident scene and drove on Highway 221 looking for the missing driver. Two or three miles north of the accident scene, he saw a man walking on the left side of Highway 221 and stopped to question the man, later identified as Defendant. Deputy Clawson noticed a mark on Defendant's forehead and observed that he was twitching and seemed unsteady on his feet. Asked his name, Defendant replied, "Paul." Asked what he was doing walking along the highway, Defendant replied, "I don't know, I'm too smoked up on meth." Deputy Clawson handcuffed Defendant for safety purposes and asked if he was in pain. Defendant said that he was, and Deputy Clawson called for medical help.
 

 Deputy Clawson did not ask Defendant how he came to be in pain. Deputy Clawson did not ask Defendant about his admitted illegal activity or attempt to determine whether Defendant was impaired by a substance or as a result of the accident. Deputy Clawson instead focused on Defendant's medical wellbeing. When emergency medical personnel arrived, Deputy Clawson removed the handcuffs and allowed Defendant to leave in an ambulance.
 

 Trooper Boone traveled from the accident scene to Cannon Hospital, where he learned Defendant had been taken by ambulance. He found Defendant in a hospital room at approximately 9:55 p.m. and explained he was investigating the reported accident. Answering Trooper Boone's questions, Defendant confirmed that he had been driving his vehicle and said it had run out of gas. Defendant then said that "he was hurt bad and was involved in a wreck a couple of hours ago." Asked if he had been drinking alcohol, Defendant said no. Asked if he had taken any medications, Defendant "said he was on meth." Trooper Boone did not ask Defendant or medical personnel whether Defendant had been given any pain medication in the ambulance or in the hospital.
 

 Trooper Boone observed that Defendant was twitching, appeared dazed, took several seconds to form words in response to questions, and shouted his answers to questions. Defendant said he was "messed up" and unable to perform any sobriety tests. Defendant did not know the date, the day of the week, or the time. Trooper Boone formed the opinion that Defendant had consumed a sufficient amount of an impairing substance to appreciably impair his mental and physical faculties. Trooper Boone then informed Defendant that he would be charged with driving while impaired and advised Defendant of his Miranda rights. After Defendant confirmed that he understood his rights, Trooper Boone asked further questions. Defendant again said that he had run out of gas while driving from Banner Elk. Defendant said he "was just driving" and did not have a destination. Defendant did not recall which highway
 
 *744
 
 he had been on or what city he was in. Trooper Boone did not ask Defendant when he had last consumed meth, when he became impaired, whether he had consumed meth prior to or while driving, or what Defendant did between the time of the accident and the time Deputy Clawson found him walking beside the highway.
 

 Following an order by the trial court granting Defendant's motion to suppress, the State presented no evidence of any laboratory test reflecting the presence or concentration, if any, of any impairing substance in Defendant's blood or urine.
 

 Analysis
 

 This appeal requires us to examine the boundary between evidence supporting suspicion and conjecture, which is insufficient to submit a criminal charge to a jury, and, on the other hand, evidence allowing a reasonable inference of fact, which is sufficient to support a criminal conviction.
 

 Defendant argues that the State failed to present substantial evidence of an essential element of DWI-that Defendant was impaired
 
 while
 
 he was driving.
 

 This Court reviews a trial court's order denying a defendant's motion to dismiss
 
 de novo
 
 .
 
 State v. McKinnon
 
 ,
 
 306 N.C. 288
 
 , 289,
 
 293 S.E.2d 118
 
 , 125 (1982). "When ruling on a defendant's motion to dismiss, the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense."
 
 State v. Smith
 
 ,
 
 186 N.C. App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007).
 

 "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith
 
 ,
 
 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor."
 
 State v. Rose
 
 ,
 
 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994).
 

 Driving while impaired is a statutory offense in North Carolina.
 
 N.C. Gen. Stat. § 20-138.1
 
 (a) (2015) provides in pertinent part that "[a] person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State ... while under the influence of an impairing substance ...." The essential elements of DWI are therefore: "(1) Defendant was driving a vehicle; (2) upon any highway, any street, or any public vehicular area within this State; (3) while under the influence of an impairing substance."
 
 State v. Mark
 
 ,
 
 154 N.C. App. 341
 
 , 345,
 
 571 S.E.2d 867
 
 , 870 (2002),
 
 aff'd
 
 ,
 
 357 N.C. 242
 
 ,
 
 580 S.E.2d 693
 
 (2003) (per curium) (citing
 
 N.C. Gen. Stat. § 20-138.1
 
 ).
 

 Defendant compares the evidence in this case to that in
 
 State v. Hough
 
 ,
 
 229 N.C. 532
 
 ,
 
 50 S.E.2d 496
 
 (1948), in which the North Carolina Supreme Court held the evidence was insufficient to raise more than a suspicion or conjecture of impairment. In that case, two officers arrived at the scene of an accident approximately 30 minutes after it was reported.
 

 Id.
 

 at 533
 
 ,
 
 50 S.E.2d at 497
 
 . One officer testified his opinion of the defendant's intoxication was based on the fact that he smelled something on the defendant's breath.
 

 Id.
 

 at 533
 
 ,
 
 50 S.E.2d at 497
 
 . The other officer testified that it was his opinion the defendant was intoxicated or under the influence of something.
 

 Id.
 

 at 533
 
 ,
 
 50 S.E.2d at 497
 
 . But neither officer could testify with certainty whether the defendant's condition was the result of intoxication or the result of the injuries he sustained in the accident.
 

 Id.
 

 at 533
 
 ,
 
 50 S.E.2d at 497
 
 . The Court, reversing the trial court's denial of the defendant's motion for judgment as of nonsuit, reasoned that "[i]f the witnesses who observed the defendant immediately after his accident, were unable to tell whether or not he was under the influence of an intoxicant or whether his condition was the result of the injuries he had just sustained, we do not see how the jury could do so."
 

 Id.
 

 at 533
 
 ,
 
 50 S.E.2d at 497
 
 .
 

 The State likens the evidence of this case with the facts of
 
 State v. Collins
 
 ,
 
 247 N.C. 244
 
 , 248,
 
 100 S.E.2d 489
 
 , 491 (1957), in which the North Carolina Supreme Court distinguished
 
 *745
 

 Hough
 
 and upheld a conviction for impaired driving. The defendant in
 
 Collins
 
 was thrown from his automobile after crossing the center lane and striking another vehicle.
 
 Id.
 
 at 246,
 
 100 S.E.2d at 490
 
 . The driver of the second vehicle approached the defendant and asked if he could take the defendant to the doctor.
 
 Id.
 
 at 246,
 
 100 S.E.2d at 490
 
 . The defendant was holding his head as if hurt, but when the second driver asked if he could take the defendant to a doctor, the defendant said no.
 
 Id.
 
 at 246,
 
 100 S.E.2d at 490
 
 . The defendant then left the scene.
 
 Id.
 
 at 246,
 
 100 S.E.2d at 490
 
 . The defendant returned to the scene approximately 45 minutes later and officers observed that he had a strong odor of alcohol on his breath, had urinated his pants, his speech was incoherent, and he was unable to stand without assistance.
 
 Id.
 
 at 246,
 
 100 S.E.2d at 490
 
 . Officers noticed no cuts, bruises, or abrasions on the defendant's head, and the defendant said he was not hurt.
 
 Id.
 
 at 246,
 
 100 S.E.2d at 490
 
 . The Court, considering the evidence in the light most favorable to the State, concluded that "the evidence of defendant's intoxication was not too remote in point of time, or too speculative, to permit a legitimate inference that the defendant was under the influence of intoxicating liquor at the time of the collision ...."
 
 Id.
 
 at 248,
 
 100 S.E.2d at 491
 
 .
 

 The record here contrasts sharply with the facts in
 
 Collins
 
 . The State presented no evidence of when Deputy Clawson encountered Defendant. Trooper Boone did not encounter Defendant until approximately 9:55 p.m., more than 90 minutes after the accident was reported. Defendant told Trooper Boone that he had been in a wreck "a couple of hours ago." That is more than twice as long as the delay which
 
 Collins
 
 held was "not too remote in point of time" between when a witness saw the defendant exiting his vehicle and law enforcement officers encountered him. Further, unlike in
 
 Collins
 
 , the State presented no evidence of how much time elapsed between the vehicle stopping on the shoulder and the report of an accident being made. Also, unlike in
 
 Collins
 
 , the State presented no testimony by any witness who observed Defendant driving the vehicle at the time of the accident or immediately before the accident.
 

 Evidence of Defendant's physical condition also distinguishes this case from
 
 Collins
 
 . In
 
 Collins
 
 , the defendant denied being hurt and declined medical treatment. Here, by contrast, both Deputy Clawson and Trooper Boone observed an injury on Defendant's head, emergency medical personnel transported Defendant to a hospital, and Defendant said he was "hurt bad."
 

 The limited evidence in this case is more similar to
 
 Hough
 
 than to
 
 Collins
 
 . Deputy Clawson, who first found Defendant after he had walked two or three miles beyond his vehicle, did not determine whether Defendant's condition was caused by an impairing substance or by the injury that resulted in emergency medical personnel taking Defendant to the hospital. Trooper Boone, who interviewed Defendant in the hospital, did not obtain information concerning when or where Defendant had consumed meth or any other impairing substance. Neither officer even knew when Defendant's vehicle had veered off the highway.
 

 The gaps in evidence in this case are also analogous to those in
 
 State v. Ray
 
 ,
 
 54 N.C. App. 473
 
 ,
 
 283 S.E.2d 823
 
 (1981). In
 
 Ray
 
 , a law enforcement officer found the defendant, who was intoxicated, alone in a disabled vehicle, "halfway [in] the front seat."
 
 Id.
 
 at 474-75,
 
 283 S.E.2d at 825
 
 . This Court held that the trial court erred in denying the defendant's motion to dismiss a driving while impaired charge because "[the] circumstantial evidence alone is insufficient to support a conclusion that the defendant was the driver."
 
 Id.
 
 at 475,
 
 283 S.E.2d at 825
 
 . This Court noted that the State presented no evidence that the car "had been operated recently or that it was in motion at the time the officer observed the defendant ... [n]or did the State offer evidence that the motor was running with the defendant sitting under the steering wheel at the time the officer came upon the scene ...."
 
 Id
 
 . at 475,
 
 283 S.E.2d at 825
 
 .
 

 Here, unlike in
 
 Ray
 
 , the State presented evidence that Defendant owned the vehicle, and Defendant admitted that he had been driving his vehicle and wrecked it "a couple
 
 *746
 
 of hours" earlier. But Defendant did not admit that he had been "smoked up on meth" or otherwise impaired when he was driving the vehicle. And the State presented no evidence, direct or circumstantial, to establish that essential element of the crime of driving while impaired.
 

 "When the facts and circumstances warranted by the evidence do no more than raise a suspicion of guilt, they are insufficient to make out a case and a motion to dismiss should be allowed."
 
 State v. Blizzard
 
 ,
 
 280 N.C. 11
 
 , 16,
 
 184 S.E.2d 851
 
 , 854 (1971). We are bound to follow our precedent.
 

 Conclusion
 

 Because the State presented insufficient evidence to establish that Defendant was impaired while driving, we hold that the trial court erred in denying Defendant's motion to dismiss and reverse Defendant's conviction.
 

 REVERSED.
 

 Judges STROUD and DILLON concur.