IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-436

Filed 16 April 2025

Union County, Nos. 21 CRS 53342-43

STATE OF NORTH CAROLINA

v.

BRANDON WALKER BRYANT

Appeal by Defendant from Judgment entered 30 November 2023 by Judge George R. Hicks in Union County Superior Court. Heard in the Court of Appeals 16 January 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Milind K. Dongre, for the State.*

*Cooley Law Office, by Craig M. Cooley, for Defendant.*

HAMPSON, Judge.

**Factual and Procedural Background**

Brandon Walker Bryant (Defendant) appeals from a Judgment entered upon jury verdicts finding him guilty of Felony Trafficking in Heroin by Possession, Felony Trafficking in Heroin by Transportation, and Misdemeanor Possession of Drug Paraphernalia.[1] The Record before us—including evidence presented at trial—tends to reflect the following:

_____

[1] On appeal, however, Defendant challenges only the conviction for Misdemeanor Possession of Drug Paraphernalia.

On 6 September 2021, Detective Brantley Birchmore and Officer Jacob McWhorter of the Monroe Police Department (MPD) responded to a report of suspected shoplifting at a Belk department store in Monroe, North Carolina. The store's Loss Prevention Officer (LPO) identified Defendant, Samantha West, and Jimmy Russell as potential shoplifters.

Detective Birchmore and Officer McWhorter approached Defendant, West, and Russell and explained "Belk suspected or thought that they might be shoplifting." Detective Birchmore requested the group walk him and Officer McWhorter to their car. Russell, the car's registered owner, consented to a search of the vehicle; no store merchandise was found. West agreed to a search of her handbag, during which Detective Birchmore discovered a "medicine bottle" holding "another type of smaller container," within which were "plastic baggies" containing "a brown powder[y] tar like substance." Upon this finding, West was detained.

As West was being placed in handcuffs, Detective Birchmore saw Defendant "make a motion from the front of his body with his hand . . . going around behind his back." Detective Birchmore observed Defendant holding a "bright orange or red . . . container of some sort". After Defendant refused to identify what he was holding, Detective Birchmore attempted to detain him. Defendant "took off" running through the parking lot and Detective Birchmore, along with Officer McWhorter, chased after him. During the chase, Officer McWhorter observed Defendant remove "a clear tube with [a] reddish orangish cap" from his right front pocket. Officer McWhorter saw

Defendant throw the container toward Russell's vehicle immediately before Defendant was apprehended.

Other officers, including Detective Patrick Torpey and Officer Bryson Burton had arrived on the scene to provide backup assistance. Officer Burton searched Defendant and found a clear glass pipe, a red straw, and two "clear plastic baggies"—one containing "a black tar substance" and the other containing "a white crystal like substance"—all in Defendant's right front pants pocket. While Officer Burton searched Defendant, Detective Birchmore recovered the container Defendant had thrown. The container held four small baggies of "a brown tar like substance." These baggies, along with the pipe and other items, were sent to the North Carolina State Crime Laboratory for testing. Forensic analysis revealed the baggies found in the container Defendant had thrown contained approximately 29.53 total grams of heroin. No forensic analysis was conducted on the pipe or other items.

On 29 November 2021, Defendant was indicted for Trafficking in Heroin by Possession, Trafficking in Heroin by Transportation, Possession of Drug Paraphernalia, and Possession of Methamphetamine. The matter came on for trial on 27 November 2023. On 28 November 2023, the State dismissed the charge of Possession of Methamphetamine because the Lab had not finished its testing. At the close of the State's evidence, defense counsel moved to dismiss the charge of Possession of Drug Paraphernalia. The trial court denied this motion. Defense counsel renewed its Motion to Dismiss after declining to present evidence. Again, the

trial court denied the Motion.

On 30 November 2023, the jury returned verdicts finding Defendant guilty of all three charges. The trial court consolidated the convictions and entered a Judgment sentencing Defendant to 225 to 282 months imprisonment. Defendant orally gave Notice of Appeal in open court.

## Issue

The sole issue on appeal is whether the trial court erred in denying Defendant's Motions to Dismiss the charge of Possession of Drug Paraphernalia.

## Analysis

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "Upon [a] defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984) (citation omitted). "If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion [to dismiss] should be allowed." *Fritsch*, 351 N.C. at 378,

526 S.E.2d at 455 (citation omitted).

"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted). However, "[w]hether the State has offered such substantial evidence is a question of law for the trial court." *State v. McKinney*, 288 N.C. 113, 119, 215 S.E.2d 578, 583 (1975) (citations omitted).

Defendant argues the trial court erred in denying his Motions to Dismiss the charge of Possession of Drug Paraphernalia. Under N.C. Gen. Stat. § 90-113.22, titled Possession of Drug Paraphernalia, it is a Class 1 misdemeanor to "knowingly use, or to possess with intent to use, drug paraphernalia to . . . inject, ingest, inhale, or otherwise introduce into the body a controlled substance *other than marijuana* which it would be unlawful to possess." N.C. Gen. Stat. § 90-113.22(a), (b) (2023) (emphasis added).[2] On appeal, Defendant challenges only the element of intent. Specifically, Defendant argues the State did not present sufficient evidence he intended to use the pipe in connection with a controlled substance other than marijuana.[3] Defendant

---

[2] Possession of Marijuana Drug Paraphernalia is a separate, lesser included offense of N.C. Gen. Stat. § 90-113.22. *See* N.C. Gen. Stat. § 90-113.22A (2023) (defining Possession of Marijuana Drug Paraphernalia as a Class 3 misdemeanor).

[3] At trial, defense counsel argued the pipe was not drug paraphernalia as defined by N.C. Gen. Stat. § 90-113.21. Defendant did not make this argument in his briefing and appears to have

contends the pipe could have been used to smoke marijuana or for some other use, rather than any other controlled substance.

While much of the caselaw addressing the specific intent to use drug paraphernalia to introduce a controlled substance into the body is unpublished and, thus, not controlling legal authority,[4] we find *State v. Gamble* persuasive in our assessment of the facts at bar. In *Gamble*, officers searched a home where an informant had purchased cocaine. *State v. Gamble*, 218 N.C. App. 456, 721 S.E.2d 763, 2012 WL 380251, at *1 (2012) (unpublished). During the search, the defendant was observed exiting a bedroom; the officers searched the bedroom and located a bag of cocaine inside a chair, as well as "crack pipes concealed in a shoe box and under a couch". *Id.* at *4. The defendant was indicted for and convicted of, *inter alia*, possession of drug paraphernalia. *Id.* at *1. On appeal, the defendant argued there was insufficient evidence of his intent to use the crack pipes in connection with a controlled substance. *Id.* at *4. The State's evidence of intent included: the crack pipes were found in the same room as cocaine, a controlled substance; an officer testified that "through his training and experience he knew that the glass pipe found

---

abandoned this argument on appeal. Nonetheless, we conclude there was substantial evidence the pipe constitutes drug paraphernalia. *See State v. Garrett*, 246 N.C. App. 651, 783 S.E.2d 780, 785 (2016) (glass pipe was drug paraphernalia); *State v. Huffman*, 222 N.C. App. 636, 731 S.E.2d 276, 2012 WL 3573940, at *6 (2012) (unpublished) (same); *State v. Christopher*, 184 N.C. App. 758, 646 S.E.2d 864, 2007 WL 2034113, at *2 (2007) (unpublished) (same).

[4] Our Rules of Appellate Procedure provide: "An unpublished decision of the North Carolina Court of Appeals does not constitute controlling legal authority. Accordingly, citation of unpublished opinions in briefs, memoranda, and oral arguments in the trial and appellate divisions is disfavored[.]" N.C.R. App. P. 30(e)(3) (2024).

in the shoe box was a crack pipe because it was charred, broken at the ends, and was stuffed with a brillo pad"; and another officer testified the pipe found under the couch was "also charred." *Id.* The Court held this evidence was sufficient to establish the defendant intended to use the crack pipes in connection with a controlled substance. *Id.*

Similarly, in *State v. Harlee*, also an unpublished case, this Court held there was sufficient evidence of the defendant's intent to introduce a controlled substance other than marijuana. *State v. Harlee*, 180 N.C. App. 692, 639 S.E.2d 143, 2006 WL 3718084 (2006) (unpublished). This evidence included a ceramic pipe found on the defendant; officer testimony that "through his experience as a police officer, a ceramic pipe is used to ingest crack cocaine" and the defendant's pipe "had burn marks where a lighter had been used to heat the crack cocaine"; and additional officer testimony that the pipe "was a crack pipe." *Id.* at *3 (internal quotation marks omitted).

Defendant points to *State v. Hedgecoe*, 106 N.C. App. 157, 415 S.E.2d 777 (1992) and *State v. Eldred,* 259 N.C. App. 345, 815 S.E.2d 742 (2018) in support of his argument. In *Hedgecoe*, this Court held the evidence of the defendant's intent to introduce a controlled substance was insufficient. 106 N.C. App. at 164, 415 S.E.2d at 781. The only evidence presented at trial was a hypodermic syringe and needle that had been found on the defendant, along with an officer's testimony that the items "were used to introduce drugs of 'some kind' into the body." *Id.* The Court found the evidence "merely established that defendant possessed a hypodermic syringe and

needle but did not show any other incriminating circumstances." *Id.* Thus, "mere possession . . . fail[ed] to establish the crucial element of possession of drug paraphernalia with the accompanying intent necessary to establish a violation of our Controlled Substances Act." *Id.*

In *Eldred*, we held there was insufficient evidence to support the defendant's conviction for driving while impaired. 259 N.C. App. at 350-51, 815 S.E.2d at 746. The defendant was found "[t]wo or three miles" away from his wrecked vehicle. *Id.* at 346, 815 S.E.2d at 743. He had visible head injuries and told officers he was "smoked up on meth." *Id.* at 346, 815 S.E.2d at 743. However, no evidence was produced at trial of "whether Defendant's [impairment] was caused by an impairing substance or by [his injuries]," "when or where Defendant had consumed meth or any other impairing substance[,]" and when the vehicle had crashed. *Id.* at 350, 815 S.E.2d at 745. The Court reasoned this evidence did "no more than raise a suspicion of guilt[.]" *Id.*, 815 S.E.2d at 746 (citation omitted). Thus, there was insufficient evidence to support the conclusion the defendant was impaired while driving.

Here, unlike *Hedgecoe*, the evidence at trial reflected more than "mere possession" of drug paraphernalia. 106 N.C. App. at 164, 415 S.E.2d at 781. Likewise, the facts before us are distinguishable from *Eldred*, where there were significant "gaps in [the] evidence." 259 N.C. at 345, 815 S.E.2d at 742. Indeed, the evidence at trial tended to show Defendant was found contemporaneously in possession of drug paraphernalia—the pipe—and a controlled substance other than

marijuana—heroin. Moreover, there is no evidence Defendant was in possession of marijuana or other substances for which the pipe may have been used.

Here, as in *Gamble and Harlee*, the State presented evidence of incriminating circumstances from which a jury could reasonably infer Defendant intended to use the glass pipe in connection with a controlled substance other than marijuana: heroin. The evidence tended to show Defendant possessed the pipe and the baggies of heroin in the same right front pocket. The pipe, admitted into evidence and presented to the jury, was visibly charred—consistent with signs of prior use. Furthermore, like the officers in *Gamble* and *Harlee*, Detective Torpey testified, based on his training and experience, the pipe was "consistent with narcotic use". This evidence is sufficient to support the inference Defendant intended to use the pipe in connection with a controlled substance other than marijuana. *See Harlee*, 2006 WL 3718084 at *3. *See also In re A.O.A.*, 248 N.C. App. 453, 790 S.E.2d 753, 2016 WL 3889922, at *3 (2016) (unpublished) (observing there was no evidence of a controlled substance "found anywhere near" the defendant in holding there was insufficient evidence of intent to use drug paraphernalia in connection with a controlled substance).

Thus, viewed in the light most favorable to the State, there was substantial evidence Defendant intended to use the pipe in connection with a controlled substance other than marijuana. Therefore, the trial court properly denied Defendant's Motions to Dismiss. Consequently, the trial court did not err in entering Judgment against Defendant on the jury verdicts.

## <u>Conclusion</u>

Accordingly, for the foregoing reasons, we conclude there was no error in Defendant's trial and affirm the Judgment.


NO ERROR.

Judges GORE and FREEMAN concur.